**In re CRYSEN/MONTENAY ENERGY COMPANY, Debtor.**

**Crysen/Montenay Energy Company, Plaintiff,**

v.

**Shell Oil Company and Scallop Petroleum Company, Defendants.**

**No. 97 Civ. 5072 MGC.**

United States District Court, S.D. New York.

Aug. 31, 1999.

---

Becker, Glynn, Melamed & Muffly LLP by Richard N. Chassin, Matthew W. Woodruff, Zeb Landsman, New York City, for Debtor/Plaintiff.

Anderson Kill & Olick, P.C. by Mark L. Weyman, Noah H. Charlson, New York City, for defendants.

*OPINION*

CEDARBAUM, District Judge.

This is a non-core adversary proceeding arising out of a contract for the sale of fuel oil from Crysen/Montenay Energy Company ("Crysen") to Scallop Petroleum Com-

pany. After filing for bankruptcy, Crysen sued Scallop and Shell Oil Company, Scallop's former parent company and successor-in-interest, for breach of contract. Following more than eight years of litigation, Bankruptcy Judge Blackshear referred the proceeding to arbitration. The arbitration panel found for defendants, and Judge Blackshear issued proposed findings of fact and conclusions of law confirming the arbitration award and granting defendants' motion to dismiss the adversary proceeding with prejudice. Crysen now files objections to the proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c)(1), arguing, *inter alia,* that the bankruptcy judge lacked the power to order arbitration and, in any event, erred in ordering arbitration because defendants had waived any right they had to arbitration. For the reasons set forth below, I accept Judge Blackshear's proposed conclusions of law and dismiss the adversary proceeding with prejudice.

## BACKGROUND

In January of 1986, Scallop contracted with Crysen for the purchase of 300,000 barrels of fuel oil with a maximum sulfur content of 0.7 percent, at a price of $24.55 per barrel. (Pl.App.[1] 420.) After a portion of the contracted-for oil was discharged from the transporting vessel to Scallop's appointed port, Scallop asserted that the oil did not conform to the contract and refused to accept the remainder. While contesting Scallop's assertion, Crysen "cured" the allegedly non-conforming oil which had been discharged from the vessel by supplying a cargo of low-sulfur fuel oil for blending. However, Scallop allegedly refused to allow Crysen to "cure" the balance of the cargo, which had not been discharged from the vessel. According-

ing to Crysen, it ultimately sold this cargo to another customer at a lower price.

The contract between Crysen and Scallop provided: "All disputes arising or in connection with this contract will be determined by arbitration in New York, New York in accordance with the Rules of the American Arbitration Association by (3) three arbitrators." (Pl.App. 420b.)

In June of 1986, Crysen filed a petition for reorganization under chapter 11 of the United States Bankruptcy Code. On March 16, 1987, Crysen commenced an adversary proceeding against Scallop pursuant to 11 U.S.C. § 521 *et seq.,* asserting a claim based on Scallop's rejection of the fuel oil.[2] The complaint alleged that the action was a "core proceeding" under 28 U.S.C. § 157(b)(2). (Pl.App. 18.) Scallop's answer to the complaint, dated May 7, 1987, asserted a "First Affirmative Defense of Arbitration as to All Claims." On May 29, 1987, Bankruptcy Judge Blackshear denied Scallop's motion to stay the proceeding and submit the claims to arbitration. (Pl.App. 57–59.) Scallop did not appeal Judge Blackshear's order, and the parties now dispute whether that order was appealable at the time.

Scallop then served amended answers dated December 15, 1987, March 11, 1988, and August 25, 1988, none of which asserted a defense of arbitrability. (Pl.App. 60, 66, 78.) By stipulation dated November 15, 1988, Scallop and Crysen agreed that Shell—Scallop's parent company which had assumed Scallop's rights and liabilities in December 1987—would be added as a defendant. (Pl.App. 88.) Pursuant to that stipulation, Crysen served an amended complaint dated December 19, 1988 naming Scallop and Shell as defendants. (Pl.App. 93.) Scallop and Shell served an answer to the amended complaint and de-

---

1. "Pl.App." refers to the "General Appendix" submitted in support of Crysen's objections.

2. Crysen also asserted claims (claims two and three) based on two other contracts that the parties had entered into in January and Feb-

ruary of 1986. (Pl.App. 17–24.) Claim three was withdrawn by stipulation in 1990. A portion of claim two was apparently resolved by the arbitrators, but neither party now objects to the disposition of that claim.

manded a trial by jury on Crysen's claims. (Pl.App. 102.) Scallop and Shell did not assert a defense of arbitrability in this pleading.

Crysen moved for partial summary judgment in April 1990, arguing that even if the oil was non-conforming, Scallop wrongfully rejected the undischarged fuel by denying Crysen the right to cure under N.Y.U.C.C. § 2–508(2). (Pl.1990 App.[3] 1–2, 141.) In May of 1990, defendants "cross-moved" for partial summary judgment, arguing that N.Y.U.C.C. § 2–508(2) is inapplicable because the time-of-the-essence clause in the contract effectively eliminated Crysen's right to cure after the time set for performance. (*Id.* at 161–63, 555–80.) Defendants also sought a declaration that the fuel oil was non-conforming. (*Id.* at 551–55.) In a decision dated September 24, 1991, Judge Blackshear held that whether the oil conformed was a genuine issue of disputed fact. He also ruled that because the finder of fact might ultimately determine that the oil was conforming, thus mooting the cure issue, it was appropriate not to decide the legal question of whether Crysen had a right to cure. "[A] determination by this Court after trial that the oil does not conform to the contract specifications, would allow either party to again move for summary judgment on the issue of cure." (Pl.App. 128.)

In November of 1993, defendants sought to compel additional discovery. Judge Blackshear denied defendants' application, but permitted defendants to designate two additional expert witnesses for trial. (Pl. App. 199–200.)

On August 12, 1994, upon defendants' motion, Judge Blackshear ruled that the adversary proceeding was non-core. (Pl. App. 201–202.)

By notice of motion dated September 27, 1994, the defendants moved in the district court for an order withdrawing the refer-

ence from the bankruptcy court. The defendants argued that the claims should be adjudicated in the district court in light of the non-core determination and defendants' demand for a jury trial. Judge Duffy denied the motion, without opinion, on November 14, 1994. Defendants sought reargument, and Judge Duffy denied that application on January 5, 1995.

At the same time, Crysen moved in the bankruptcy court to strike defendants' demand for a jury trial. Defendants filed a "cross-motion" demanding a jury trial. At a December 7, 1994 hearing, Judge Blackshear denied Crysen's motion. (Pl.App. 278, 728.)

In October of 1995, the defendants renewed their 1987 application to stay the adversary proceeding and to compel arbitration of the claims. By order dated November 20, 1995, Judge Blackshear granted defendants' motion. (Pl.App. 394–95.)

A panel of three arbitrators issued an award on January 29, 1997 denying Crysen's claims in their entirety. (Pl.App. 396–97.) In proposed findings of fact and conclusions of law, Judge Blackshear recommended confirmation of the arbitration award.

## DISCUSSION

### I. Standard of Review

■ In non-core proceedings, the district court reviews *de novo* those portions of a bankruptcy judge's proposed findings of fact and conclusions of law to which any party has made timely and specific objection. 28 U.S.C. § 157(c)(1); *see also* Fed. R.Bankr.P. 9033(d).

### II. Bankruptcy Court's Power to Compel Arbitration

■ Crysen argues that the bankruptcy judge did not have the power to compel arbitration, because sections 3 and 4 of the

---

**3.** "Pl.1990 App." refers to the appendix submitted by Crysen relating to the 1990 motions

for partial summary judgment.

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.,* authorize only a United States district court to direct the parties to arbitrate, and because the power to compel arbitration is not one of the designated powers of a bankruptcy judge under chapter 6 of title 28 of the United States Code. Crysen also points to references in the FAA to the Federal Rules of Civil Procedure and jury trials as confirming that bankruptcy judges are not empowered to stay proceedings and compel arbitration. Crysen does not, however, cite any case holding or implying that a bankruptcy judge does not have the power to stay proceedings and compel arbitration.

The FAA provides that "courts of the United States" may stay an action pending arbitration:

> "If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

9 U.S.C. § 3.

It is debatable whether the term "courts of the United States" as used in the FAA should be interpreted to refer directly to bankruptcy courts. The term "courts of the United States" is not defined in the FAA. Moreover, the pertinent section of the FAA was enacted prior to the reconfiguration of the bankruptcy courts in 1978 and 1984. Act of July 30, 1947, Pub.L. No. 80–282, 61 Stat. 669. In construing the statutory language "courts of the United States" in other contexts, appellate courts have disagreed as to whether the term includes bankruptcy courts. *Compare Grewe v. United States (In re Grewe),* 4 F.3d 299, 304–05 (4th Cir.1993), *and United States v. Yochum (In re Yochum),* 89 F.3d 661, 668–69 (9th Cir.1996) (holding that a bankruptcy court may award attorneys' fees under 26 U.S.C. § 7430(a)), *with I.R.S. v. Brickell Inv. Corp. (In re Brickell Inv. Corp.),* 922 F.2d 696, 698–702 (11th Cir.1991) (holding that "court[s] of the United States," as used in 26 U.S.C. § 7430, refers only to Article III courts).

Even if Crysen is correct that the language of the FAA should not be construed to refer directly to bankruptcy courts, bankruptcy judges have the power to stay proceedings and compel arbitration by virtue of the district courts' referral of jurisdiction. Section 1334(b) of title 28 of the United States Code provides that the district courts shall have original jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. The district court may, in turn, refer these proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). Bankruptcy judges are empowered to "hear and determine" all core proceedings arising under title 11, or arising in a case under title 11, and to enter appropriate orders and judgments. 28 U.S.C. § 157(b)(1). A bankruptcy judge is also empowered to "hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11." 28 U.S.C. § 157(c)(1). However, in such a proceeding, the bankruptcy judge must submit proposed findings of fact and conclusions of law to the district court, which has the power the enter final orders or judgments. *Id.*

Bankruptcy judges do not have an independent source of jurisdiction. Their power is derived from district courts. *See* 28 U.S.C. §§ 1334(a) and (b); 28 U.S.C. § 157(a); *see also* 1 Lawrence P. King, *Collier on Bankruptcy* ¶ 3.02[1] (15th Ed. Rev.1999) ("The entire grant of jurisdiction to the district courts made by section 1334(a) and (b)—title 11 cases, and any or all proceedings arising under title 11 or arising in or related to a case under title

11—may be referred to the bankruptcy judges."); 1 William L. Norton, Jr., *Norton Bankruptcy Law & Prac.2d* (1999) § 4:18 (the "1984 Bankruptcy Amendments, in 28 U.S.C.A. § 1334(a), (b), and (e) ... initially vest all bankruptcy jurisdiction in the District Courts, but contemplate that their jurisdiction will be exercised in major part, if not entirely, by the bankruptcy judges of the district"). Indeed, the Judiciary Act provides that "the bankruptcy judges in regular active service shall constitute a unit of the district court." 28 U.S.C. § 151.

By implication, the statute gives a bankruptcy judge all powers needed to adjudicate a non-core proceeding except the power to enter a final order or judgment. *Compare* 28 U.S.C. § 157(b)(1) (specifying a bankruptcy judge's powers in core proceedings) *with* 28 U.S.C. § 157(c)(1) (specifying a bankruptcy judge's powers in non-core proceedings); *see also* 11 U.S.C. § 105(a) ("The [bankruptcy] court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [title 11]."); *Celotex Corp. v. Edwards*, 514 U.S. 300, 310 n. 7, 115 S.Ct. 1493, 131 L.Ed.2d 403 (1995) (bankruptcy court "did not lack jurisdiction under § 157(c)(1) to" stay execution of supersedeas bond "because that injunction was not a 'final order or judgment' "); 1 *Norton Bankruptcy Law & Prac.2d* § 4:18 ("When a case is referred under § 157(a), Congress surely intends that all jurisdiction otherwise vested in the District Courts be exercised by the bankruptcy judges, except to the extent that § 157(c)(1) requires the entry of the final order in a proceeding related to a bankruptcy case by the District Court or that § 157(d) contemplates a withdrawal by the District Court.").

In order for Crysen to be correct, a bankruptcy judge's derivative power to "hear" a non-core proceeding would not include the power to enter an interlocutory order staying the action and compelling arbitration in accordance with a contractual agreement to arbitrate. There is no reason to construe a bankruptcy judge's power so narrowly. A district court clearly has such power—by virtue of both its inherent power and statute [4]—and the bankruptcy judge's jurisdiction derives from the district court. Moreover, courts have recognized that in non-core proceedings, a bankruptcy judge has the power to enter other types of interlocutory orders that are not specified by statute. *See, e.g., Elkins v. X–Alpha Int'l, Ltd. (In re Kennedy)*, 48 B.R. 621, 623, 622 (Bankr.D.Ariz. 1985) (holding that bankruptcy court had authority to remand action to state court; "bankruptcy interlocutory orders in non-core proceedings need not be submitted to District Court").

Finally, the parties do not seriously dispute that, in this case, the bankruptcy judge's order compelling arbitration is subject to *de novo* review by the district court. As a result, the bankruptcy judge's enforcement of an arbitration clause under these circumstances does not even indirectly run afoul of 28 U.S.C. § 157(c)(1), which prohibits a bankruptcy judge from entering a final order or judgment in a non-core proceeding. For similar reasons, a bankruptcy judge's enforcement of an arbitration clause does not offend the teaching of *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

These conclusions are consistent with the common assumption as well as the practice in Article III courts and bankruptcy courts. Bankruptcy judges regularly compel arbitration. *See, e.g., James P. Barkman, Inc. v. Granger Constr. Co. (In re James P. Barkman, Inc.)*, 170 B.R. 321 (Bankr.E.D.Mich.1994); *Hupp Indus., Inc. v. Environmental Prod. Amalg. Pty., Inc. (In re Hupp Indus., Inc.)*, 157 B.R. 360 (Bankr.N.D.Ohio 1993); *Midwest*

---

4. A district court's power to order a stay of proceedings pending arbitration is inherent in the court itself. *Gavlik Constr. Co. v. H.F. Campbell Co.*, 526 F.2d 777 (3rd Cir.1975), *overruled on other grounds, Zosky v. Boyer*, 856 F.2d 554 (3rd Cir.1988).

*Communications Corp. v. Black Entertainment Television (In re Midwest Communications Corp.)*, 144 B.R. 354 (Bankr. E.D.Ky.1992). District judges in this circuit have impliedly held that bankruptcy judges have the power to compel arbitration. *See Bousa Inc. v. Neste Oy (In re Bousa Inc.)*, No. 92 Civ. 6194, 1993 WL 78019, at *3 (S.D.N.Y. March 16, 1993) ("[s]ince Article III judges are bound to honor agreements to arbitrate, presumably non-core proceedings involving non-executory contracts should place bankruptcy judges under similar restriction") (vacating the bankruptcy judge's denial of a motion to compel arbitration and remanding for further proceedings); *United States Lines, Inc. v. American Steamship Owners Mutual (In re United States Lines, Inc.)*, 220 B.R. 5, 13 (S.D.N.Y.1997) (vacating the bankruptcy judge's denial of a motion to compel arbitration and remanding for further proceedings). In fact, in applying Supreme Court cases requiring rigorous enforcement of agreements to arbitrate, *see, e.g., Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) and *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989), courts have held that bankruptcy judges are *required* to enforce an applicable arbitration provision unless enforcement would conflict with the purpose or provisions of the Bankruptcy Code. *See, e.g., Insurance Company of North America v. NGC Settlement Trust & Asbestos (In re National Gypsum Co.)*, 118 F.3d 1056 (5th Cir.1997).

For the foregoing reasons, the bankruptcy judge had the power to stay the proceeding and compel arbitration in this case.

### III. Waiver

Crysen also argues that defendants (1) expressly waived their right to arbitration by abandoning the affirmative defense of arbitrability in all amended pleadings subsequent to the 1987 denial of Scallop's initial application to arbitrate, and (2) impliedly waived their right by actively participating in the litigation despite defendants' right to appeal the 1987 denial of the application to arbitrate.

### A. Amended Pleadings

Following the bankruptcy judge's denial of Scallop's motion to stay the proceeding and submit the claims to arbitration on May 29, 1987, Scallop, and then Scallop and Shell, did not assert a defense of arbitrability in any of the four amended answers.

In support of its argument that this failure to re-plead constitutes an express waiver, Crysen relies on *Gilmore v. Shearson/American Express Inc.*, 811 F.2d 108 (2d Cir.1987). That case is not on point. There, the defendant had voluntarily and expressly withdrawn a pending motion to compel arbitration and later tried to renew the motion after the plaintiff amended its complaint. The Court of Appeals held that the defendant's withdrawal of the motion—which the defendant did not dispute was an express waiver of its right to arbitrate the claims in the original complaint—precluded it from reviving its arbitration demand in its response to the amended complaint. *Id.* at 111–12.

▪ In this case, defendants did not withdraw the motion to arbitrate. Rather, they omitted the affirmative defense of arbitrability in their subsequent answers after the bankruptcy judge had denied their motion to arbitrate and ruled that the defense of arbitration was unavailable. Under such circumstances, it would be unreasonable to call the amended pleadings an express waiver of arbitration.

Courts of appeals have differed over the analogous issue of whether a party may appeal the dismissal of a claim in the original pleading in cases in which the amended pleading did not reassert the claim. *Compare Davis v. TXO Prod. Corp.*, 929 F.2d 1515, 1517–18 (10th Cir.1991) (holding that a party does not waive its right to appeal

dismissal of the claim in such circumstances) and *Wilson v. First Houston Inv. Corp.*, 566 F.2d 1235, 1237–38 (5th Cir. 1978), *vacated on other grounds*, 444 U.S. 959, 100 S.Ct. 442, 62 L.Ed.2d 371 (1979), (same) *with Marx v. Loral Corp.*, 87 F.3d 1049, 1055–56 (9th Cir.1996) (holding that a party may not attack the dismissal of a claim in such circumstances; noting also that "other courts, as well as legal scholars, have criticized this Circuit's rule as 'formalistic', 'rigid,' and 'too mechanical.' "); *see also United States v. Bonanno Organized Crime Family*, 695 F.Supp. 1426, 1432 (E.D.N.Y.1988) ("The logical rule should be that filing an amended complaint omitting claims that the court has dismissed on substantive grounds does not waive the plaintiff's right to appeal the court's dismissal of those claims.") (citing 3 Moore, *Moore's Federal Practice* ¶ 15.08[8] (2d ed.1987) and 6 Wright & Miller, *Federal Practice & Procedure* § 1476 (1971)). Crysen suggests no reason to believe that the Second Circuit would follow the aberrational rule of the Ninth Circuit. In fact, in its memorandum of law, Crysen effectively conceded that if the bankruptcy judge had not ultimately stayed the proceeding to permit arbitration, defendants could have appealed the denial of the motion to arbitrate at the end of the proceeding.[5]

Crysen also relies on Second Circuit opinions stating the general rule that "an amended complaint ordinarily supersedes the original and renders it of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir.1977). None of the cases cited by Crysen are analogous to this case. For instance, in *Vesco*, the issue was whether a default judgment based on the original complaint was valid where an amended complaint was filed but not properly served on the defendant.

Accordingly, the defendants' failure to continue to plead a defense of arbitrability following the denial of their motion to arbitrate was not an express waiver of their demand to arbitrate.

## B. Implied Waiver

■ *Standard for Waiver.* Federal policy strongly favors arbitration as an alternative means of dispute resolution. *PPG Indus., Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir.1997). "The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Similarly, the Second Circuit has "emphasized that ... waiver of the right to arbitration is not to be lightly inferred," *Cotton v. Slone*, 4 F.3d 176, 179 (2d Cir. 1993) (internal citation omitted), and that the issue of waiver should be evaluated "with a healthy regard for the policy of promoting arbitration," *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 130 (2d Cir.), *cert. denied*, —— U.S. ——, 118 S.Ct. 365, 139 L.Ed.2d 284 (1997) (internal citation omitted).

■ Nonetheless, where a party does not (1) take "appropriate steps to secure" its right to arbitrate and (2) engages in protracted litigation that prejudices the opposing party, it waives its right to arbitrate. *Cotton*, 4 F.3d at 179; *see also* 9 U.S.C. § 3 (on application, a court shall stay the trial of an action subject to arbitration, "providing the applicant for the

---

5. Crysen states that it "does not contend that defendants were precluded from challenging the 1987 Order on direct appeal to the district court at the end of the case." (Pl.Memo. of Law at 25 n. 6.) At oral argument, however,

Crysen suggested that defendants in fact would have been precluded from appealing the original order at the end of the case. (7/10/98 Tr. at 4; *but see id.* at 19–20.)

stay is not in default in proceeding with such arbitration").

Few reported decisions address the first element of waiver, because in most waiver cases, the party ultimately seeking arbitration, unlike Scallop in this case, delayed taking *any* steps to secure its contractual right. Here, Scallop promptly demanded arbitration and moved for a stay pending arbitration.

By contrast, the "prejudice" element of waiver has been construed repeatedly. "[P]rejudice ... refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *PPG Indus., Inc.,* 128 F.3d at 107 (quoting *Doctor's Assocs.,* 107 F.3d at 134). Incurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver. *Id.* (citing *Leadertex, Inc. v. Morganton Dyeing & Finishing Corp.,* 67 F.3d 20, 26 (2d Cir.1995)). The Second Circuit has found prejudice where the party invoking arbitration engaged in extensive pre-trial discovery and forced its adversary to respond to substantive motions before seeking arbitration, *see Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.,* 938 F.2d 1574, 1576–77 (2d Cir.1991), filed multiple appeals and substantive motions before seeking arbitration while an adversary incurred unnecessary delay and expense, *see Kramer v. Hammond,* 943 F.2d 176, 179 (2d Cir.1991), and engaged in discovery procedures not available in arbitration before seeking arbitration, *see Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN Int'l Capital Mkts. Corp.,* 996 F.2d 1478, 1480 (2d Cir. 1993) (*per curiam* ).

While these are factors to consider, there is no bright-line rule for determining when a party has waived its right to arbitration. *PPG Indus., Inc.,* 128 F.3d at 107–08.

*"Prejudice."* There is no question that after the bankruptcy judge denied Scal-lop's prompt motion to stay the proceeding and compel arbitration, the defendants actively litigated the dispute and engaged in conduct that was inconsistent with arbitration.

In opposing Crysen's motion for summary judgment, defendants filed a partial summary judgment motion in 1990 on the central issue of whether the oil conformed to contractual specifications. *See Sweater Bee by Banff, Ltd. v. Manhattan Indus., Inc.,* 754 F.2d 457, 465 (2d Cir.1985) (stating that motion for summary judgment on a particular issue would constitute waiver of right to arbitrate that issue) (citing *Weight Watchers of Quebec Ltd. v. Weight Watchers Int'l, Inc.,* 398 F.Supp. 1057, 1061 (E.D.N.Y.1975)). Defendants also (successfully) litigated their right to a jury trial and (unsuccessfully) moved to withdraw the reference, which was relief inconsistent with arbitration. *See generally Leadertex,* 67 F.3d at 25 (defendant's "conduct has been largely inconsistent with its present assertion of its right to compel arbitration"). In addition, defendants engaged in substantial discovery, *see Com-Tech,* 938 F.2d at 1576–77 (taking of ten pre-trial depositions was factor in finding prejudice), although it is not clear whether they obtained discovery that would have been unavailable in arbitration.

Unlike most waiver cases, however, the party seeking to arbitrate did not delay in seeking arbitration. Accordingly, the prejudice inquiry here is less dispositive. The more difficult issue is whether defendants took appropriate steps to preserve their right to arbitration.

*Failure to Take Interlocutory Appeal.* A party that fails to take an authorized appeal from an interlocutory order is generally permitted to raise the question on appeal from the final judgment. In *Drayer v. Krasner,* 572 F.2d 348, 353 (2d Cir.1978), the district court granted defendants' motion for a stay pending arbitration, and plaintiff made no attempt to appeal the stay order. The parties there-

after arbitrated the wrongful termination claim, and the arbitrators issued an award for the defendants. The district court confirmed the award, and the plaintiff appealed, arguing, *inter alia,* that the arbitration clause was invalid. Judge Friendly noted that plaintiff could have appealed the district court's interlocutory order staying the action pending arbitration under 28 U.S.C. § 1292(a)(1) and the doctrine of *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942). Nevertheless, Judge Friendly concluded that plaintiff could attack the stay order after the arbitration had been completed: "Failure to take an authorized appeal from an interlocutory order does not preclude raising the question on appeal from the final judgment." *Drayer,* 572 F.2d at 353.

The Second Circuit has, *sub silentio,* modified this rule in light of the 1988 amendment to the Federal Arbitration Act. In *Cotton v. Slone,* the Second Circuit held that a party waives its right to arbitrate when it does not file an interlocutory appeal, under FAA § 16, of a denial of its application to arbitrate and thereafter actively litigates the dispute. 4 F.3d 176 (2d Cir.1993). In *Cotton,* the defendant moved to compel arbitration and to stay the proceeding pending arbitration. The district court denied the motion, and the defendant then moved for certification of an interlocutory appeal under 28 U.S.C. § 1292(b). The district court denied the motion to certify, and the defendant thereafter answered the complaint and pleaded arbitrability as a defense. The defendant proceeded to "participate actively in discovery and motion practice concerning [plaintiff's] claims over the next three years." *Id.* at 178. The Court of Appeals held that the defendant waived his right to arbitrate by actively participating in the litigation without having sought immediate appellate review available under the FAA, with which the defendant was "demonstrably familiar." *Id.* at 179–80. Such review, while

not available as of right under 28 U.S.C. § 1292(b), was available as of right under section 16(a) of the FAA.

Section 16(a) of the FAA provides that an interlocutory appeal "may be taken" from an order that denies a motion either to compel arbitration or for a stay pending arbitration, and explicitly disallows an appeal as of right from an interlocutory order that grants a stay. 9 U.S.C. §§ 16(a)(1) and (b). Section 16(a) is designed both "to streamline the appellate aspect of the litigation process so that parties may realize their arbitration rights at the earliest possible moment," and to further the liberal federal policy favoring arbitration by authorizing interlocutory appeals only from orders denying arbitration. *Cotton,* 4 F.3d at 180. Applying section 16(a) to the facts of that case, the *Cotton* Court stated that "[t]he aims of section 16(a) would be defeated if a party could reserve its right to appeal an interlocutory order denying arbitration, allow the substantive lawsuit to run its course (which could take years), and then, if dissatisfied with the result, seek to enforce the right to arbitration on appeal from the final judgment." *Id.*

In this case, Scallop could not have utilized section 16(a) to appeal the bankruptcy judge's May 1987 order denying its motion to stay proceedings and compel arbitration. Section 16(a) was enacted 18 months after that order, on November 19, 1988. Judicial Improvements and Access to Justice Act, Pub.L. No. 100–702, § 1019(a), 102 Stat. 4642 (1988) (enacting the text of section 15, which was subsequently renumbered as section 16). *Cf. Hays and Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 885 F.2d 1149 (3d Cir.1989) (section 16 applied retroactively to an appeal *that was pending* on the date of the enactment of that section); *Delmay v. Paine Webber,* 872 F.2d 356 (11th Cir. 1989) (same).

It is arguable but not clear that defendants may have been able to file an inter-

locutory appeal pursuant to the "*Enelow–Ettelson*" doctrine—the same doctrine under which the plaintiff in *Drayer* could have appealed. Under that doctrine, an order staying or refusing to stay "proceedings in federal district court pending arbitration [was then deemed] an appealable interlocutory order [granting or] refusing an injunction, 28 U.S.C. § 1292(a)(1), if the action in which the order was made is an action which, before the fusion of law and equity, was by its nature an action at law." *Gilmore v. Shearson/American Express Inc.*, 811 F.2d 108, 110 (2d Cir.1987); *Manning v. Energy Conversion Devices, Inc.*, 833 F.2d 1096, 1101 (2d Cir.1987). The *Enelow–Ettelson* doctrine was good law, albeit much criticized, until the Supreme Court overruled the precedents on which it was based in March of 1988. *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988). It would have afforded Scallop a right to appeal if the action were deemed one at law (which seems likely) and if the doctrine were applied to appeals from a bankruptcy court to a district court. It is not clear, however, whether the doctrine would have been so applied. Appeals may be taken from interlocutory orders of a bankruptcy judge only "with leave of the court." 28 U.S.C. § 158(a). While the statute does not provide guidance as to when leave should be given, courts have looked by analogy to the standards set forth in 28 U.S.C. §§ 1292(a) and (b), which govern appeals of interlocutory decisions from the district courts to the courts of appeals.[6] *See, e.g., Clark v. Sanders (In re Reserve Prod., Inc.)*, 190 B.R. 287, 290 (E.D.Tex.1995); *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc.*

*(In re 48th St. Steakhouse, Inc.)*, 46 B.R. 227, 228–29 (S.D.N.Y.1985).

If Scallop could not appeal as of right from the initial order denying arbitration, its failure to seek an appeal could not be considered a waiver, even under *Cotton*. If Scallop could have appealed the initial order denying arbitration under the *Enelow–Ettelson* doctrine, this case would not differ materially from *Drayer*: Scallop would have had a right to challenge Judge Blackshear's order on appeal from the final judgment. In that case, Crysen would have suffered even greater prejudice if the defendants had not renewed their motion to arbitrate. The case would have been tried in the bankruptcy court, and on appeal, the district court or the court of appeals could have vacated the judgment and compelled arbitration. *See Clark v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 924 F.2d 550 (4th Cir.1991) (vacating judgement following a jury verdict because district court erred in denying defendant's motion to compel arbitration; defendant had not waived right to raise issue on appeal, although interlocutory denial of arbitration motion had been appealable).

The ability to appeal the denial of a motion to arbitrate at the end of the case admittedly can delay the realization of arbitration rights and lead to inefficient results. But, as *Cotton* makes clear, eliminating this inefficiency was one of the aims of Congress in enacting section 16(a) of the FAA. For Crysen, Congress acted one-and-a-half years too late.

Crysen does not argue that defendants had an obligation to renew their motion to arbitrate earlier than they did. I have found no authority for imposing such an obligation on a party seeking arbitration.[7]

---

**6.** 28 U.S.C. § 158(c)(2) provides that "An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules." Some courts have interpreted this language to mean that the decision whether to grant leave to appeal

should be guided by the standards applicable to interlocutory appeals to the courts of appeals. *See, e.g., North Fork Bank v. Abelson*, 207 B.R. 382, 389 (E.D.N.Y.1997); *K–Mart Corp. v. Swann Ltd. Partnership (In re Swann Ltd. Partnership)*, 128 B.R. 138, 141 (D.Md. 1991).

**7.** *Metz v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 39 F.3d 1482 (10th Cir.1994),

Because defendants would have had a right to challenge the bankruptcy judge's denial of their 1987 motion to arbitrate on appeal from the final judgment, they did not waive their right to arbitrate by failing to file an interlocutory appeal under the *Enelow–Ettelson* doctrine.

### IV. Review of the Arbitration Award

Crysen argues that the bankruptcy judge erred by refusing to vacate the arbitration award, which Crysen contends was entered in manifest disregard of the law. Crysen also claims that the arbitrators, by certain evidentiary rulings, effectively refused to hear evidence "pertinent and material to the controversy." 9 U.S.C. § 10(a).

### A. Manifest Disregard of the Law

■ An arbitration award may be vacated if it is in manifest disregard of the law. *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 202 (2d Cir.1998), *cert. denied*, —— U.S. ——, 119 S.Ct. 1286, 143 L.Ed.2d 378 (1999). The Second Circuit has cautioned that the reach of this doctrine is "severely limited," and that manifest disregard "clearly means more than error or misunderstanding with respect to the law." *Id.* (citations omitted). To modify or vacate an award on this ground, a court must find both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well defined, explicit and clearly applicable to the case. *Id.* The

burden of proving a ground for vacating an arbitration award rests on the party who seeks to vacate it. *Application of National Assoc. of Broadcast Employees & Technicians*, 707 F.Supp. 124, 128 (S.D.N.Y. 1988).

■ Where arbitrators give no explanation for their decision, the award must be affirmed if a ground for the decision can be inferred from the facts of the case. *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 13 (2d Cir.1997). This is so even if the ground for their decision is based on an error of fact or an error of law. *Id.* If there is even a barely colorable justification for the outcome reached, the court must confirm the arbitration award. *Id.*

■ According to Crysen, the arbitration panel disregarded case law holding that where a neutral tester fails to follow the methods set out in a contract, his test results are invalid and not binding on the parties. Crysen argues that the third party charged with testing the quality of the fuel oil, E.W. Saybolt & Co., Inc., did not follow the testing methods set out in the parties' contract. Accordingly, the conclusion that the oil did not conform to the contract should not have been binding on Crysen.

The contract provided, "Inspection: At disport costs to be shared 50/50.—Quality based on vessel composite." (Pl.App. 420a.) The contract further specified that, for the fuel oil's sulfur content, the ASTM Test Method was to be D–1552. (*Id.* 420.) The parties agree that these provisions

which in any event is not binding in this Circuit, is distinguishable. In that case, Merrill Lynch appealed the initial denial of the motion to compel arbitration pursuant to FAA § 16, but then filed a "motion to dismiss" that interlocutory appeal because a number of circuits had held that Title VII claims were not arbitrable. One year later, a bench trial was held and judgment was entered. Thereafter, Merrill Lynch filed a notice of appeal and a Rule 60(b)(6) motion to vacate the judgment on the ground that the law had become clear that Title VII claims are arbitrable. The Tenth Circuit held that Merrill Lynch's with-

drawal of its interlocutory appeal did not "without more" constitute waiver because, at the time of the withdrawal, the arbitrability issue "was an open question" in that circuit and had been ruled on adversely in other circuits. The court noted, however, that the change in law on which Merrill Lynch relied on appeal occurred one month before the trial. Nonetheless, Merrill Lynch "waited until after trial ... to reassert its right to arbitrate." *Id.* at 1490. The court held that "the totality of Merrill Lynch's conduct constituted waiver of its right to compel arbitration." *Id.*

required that vessel composite sampling occur prior to discharge, and further agree that such a sampling was not taken at the disport. (After discharge was stopped, however, a vessel composite was eventually taken of the portion of the oil that had not yet been discharged.)

Defendants argued to the arbitrators that a full vessel composite sampling could not be taken because the ship's hatch domes were sealed and that ladders blocked the ullage holes on that ship. (Resp. Post–Hearing Memo. of Law 9–10.) Defendants argued that the hatches had been sealed because the ship did not satisfy United States Coast Guard requirements. The contract provided that Crysen "warrants that the ship used to carry the cargo shall satisfy the maritime legal requirements of the United States of America." (Pl.App. 420a.) Defendants argued that because the specified method of inspection was not possible, it was proper to use alternate, reasonable inspection methods. It relied on N.Y.U.C.C. § 2–513(4)[8] and testimony of its experts as to the reasonableness of the alternate testing procedures. Defendants also argued that under the contract, the parties had a joint responsibility to inspect the oil, and the fact that some of the oil was discharged prior to inspection did not amount to a waiver by Scallop of its right of inspection.

Crysen relies primarily on *Cities Service Co. v. Derby & Co.*, 654 F.Supp. 492 (S.D.N.Y.1987). That case held that a plaintiff seller was not bound by test results of an independent third-party inspector, where the sampling techniques were not in accordance with the contract or generally accepted practice, and the errors were of sufficient magnitude to justify an inference of fraud, bad faith or gross error. *Cities Service* is distinguishable from this case. In *Cities Service,* there was no question that the inspector could have performed the tests in accordance with the contract. In this case, the arbitrators were presented with evidence that Saybolt could not have conducted a full vessel composite sampling at the time the ship arrived at Scallop's port. The arbitrators did not manifestly disregard the law by concluding that this case fell outside the principle enunciated in *Cities Service.*

Crysen also argues that Scallop was not justified in rejecting Crysen's offer to cure after the January 29 contract deadline for delivery. Crysen asserts that it could have delivered enough low-sulphur fuel oil for blending by February 4 which was a reasonable time following the January 29 deadline. Crysen relies on N.Y.U.C.C. § 2–508(2) (McKinney 1993), which provides: "Where the buyer rejects a nonconforming tender which the seller had reasonable grounds to believe would be acceptable with or without money allowance the seller may if he seasonably notifies the buyer have a further reasonable time to substitute a conforming tender." Defendants argued to the arbitration panel that the time-of-the-essence clause effectively eliminated Crysen's right to cure after the time set for performance. That clause provided: "With respect to the dates of delivery of the oil hereunder, time is of the essence of this agreement. In the event delivery is not effected within the dates agreed, [Scallop] may cancel this contract or hold [Crysen] responsible for any damages for [Crysen's] failure to deliver the oil timely hereunder." (Pl.App. 420b.) Crysen has not shown that the

---

**8.** N.Y.U.C.C. § 2–513(4) (McKinney 1993) provides: "A place or method of inspection fixed by the parties is presumed to be exclusive but unless otherwise expressly agreed it does not postpone identification or shift the place for delivery or for passing the risk of loss. If compliance becomes impossible, inspection shall be as provided in this section unless the place or method fixed was clearly intended as an indispensable condition failure of which avoids the contract." N.Y.U.C.C. § 2–513(1) provides that "where goods are tendered or delivered or identified to the contract for sale, the buyer has a right before payment or acceptance to inspect them at any reasonable place and time and in any reasonable manner."

The contract is governed by New York law.

arbitrators' interpretation of this clause was erroneous. In any event, "simple misinterpretations of contracts" are not a basis to vacate an arbitration award. *I/S Stavborg v. National Metal Converters, Inc.*, 500 F.2d 424, 432 (2d Cir.1974).

Crysen argued that Scallop acted in a manner inconsistent with the time-of-the-essence clause and effectively waived its rights thereunder. (Pl.1990 App. 152–53.) This issue depends upon factual and credibility determinations that were within the arbitrators' discretion. Crysen has made no showing that the arbitrators exercised that discretion in manifest disregard of the law.

Because there was a barely colorable justification for the outcome reached, the arbitration award must be confirmed.

*B. Refusal to Hear Evidence*

■ Under section 10(a) of the FAA, an arbitration award may be vacated "[w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy." 9 U.S.C. § 10(a). Arbitrators are afforded broad discretion to determine whether to hear evidence, and a court may vacate an arbitration award only if the complained-of evidentiary ruling deprived the parties of a fundamentally fair hearing. *Areca, Inc. v. Oppenheimer & Co.*, 960 F.Supp. 52, 54 (S.D.N.Y.1997).

Crysen argues that the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy" by restricting the scope of cross-examination of Bruce Abugel, one of defendants' experts. Crysen asserts that its cross-examination of other of defendants' experts was restricted as well, but it does not point to the hearing transcript or otherwise specify what cross-examination was restricted. Crysen has not shown clearly how its cross-examination was limited. Crysen points to only one question that the arbitrators did not permit Crysen to ask, after having ruled

that Abugel could not testify about factual matters outside his personal knowledge but that his expert opinions could stand. Crysen objects to the following:

Q: [Quoting from Abugel's deposition] " '... there is an automatic sampling called a McFarlane drip sampler that does allow automatic sampling taken from the line on a drip basis, and if that is what he was referring to, then that was automatic sampling.' [D]o you know for a fact whether Saybolt or the [receiving port] was using a McFarlane drip sampler?"

A: "No, based on what I've seen, no, I don't. Just a drip sampler. I don't know who manufactured it."

Q: "You go on to say, 'If he was referring ....' "

Arbitrator: "Excuse me. Aren't you doing just what we said we didn't want to hear? He doesn't know what was coming out of this pipe. All he knows—you're asking him what does this testimony mean, and is this really helpful to us?"

(Pl.App. 724.)

■ Moreover, Crysen cross-examined Abugel extensively and took his deposition prior to the hearing. A party does not have an absolute right to cross-examination at an arbitration hearing. *Sunshine Mining Co. v. United Steelworkers of America*, 823 F.2d 1289, 1295 (9th Cir. 1987).

Crysen objects to the arbitrators' receipt of the experts' affidavits on similar grounds. Defendants made clear, however, that they were not proffering the affidavits as evidence of any facts, but that the affidavits merely set out the record evidence on which the experts were relying in formulating their opinions. (Resp. Opp. to Claimant's Motion to Strike Affs. 11–12.)

Crysen has failed to show that the limitation on cross-examination and the admis-

sion of the affidavits deprived it of a fair hearing.

## CONCLUSION

For the reasons set forth above, I accept the proposed findings of fact and conclusions of law of the bankruptcy judge to the extent that I hold that the bankruptcy judge had the power to compel arbitration, defendants did not waive their right to arbitration, and the arbitrators did not enter their award in manifest disregard of the law. The adversary proceeding is dismissed with prejudice.

SO ORDERED.