In re: CRYSEN/MONTENAY
ENERGY CO., Debtor.

Crysen/Montenay Energy Co.,
Debtor–Appellant,

v.

Shell Oil Co. and Scallop Petroleum
Co., Defendants–Appellees.

Docket No. 99–5067.

United States Court of Appeals,
Second Circuit.

Argued: April 13, 2000.

Decided: Aug. 29, 2000.

Richard N. Chassin (Joseph D. Becker and Zeb Landsman, on the brief), Becker, Glynn, Melamed & Muffly LLP, New York, NY, for Debtor–Appellant.

Mark L. Weyman, (James L. Michalak, on the brief), Anderson Kill & Olick, P.C., New York, NY, for Defendants–Appellees.

Before: NEWMAN, KEARSE, and CABRANES, Circuit Judges.

JOSÉ A. CABRANES, Circuit Judge:

Debtor-appellant Crysen/Montenay Energy Co. ("Crysen") appeals from a judgment of the United States District Court for the Southern District of New York (Miriam Goldman Cedarbaum, *Judge*) accepting the Proposed Findings of Fact and Conclusions of Law of the Bankruptcy Court (Cornelius Blackshear, *Bankruptcy Judge*) and dismissing, following arbitration, claims brought in a non-core adversary proceeding. We affirm the judgment, concluding that: (1) defendants' failure to replead in subsequent answers an affirmative defense of arbitrability that already had been rejected by the Bankruptcy Court did not constitute an express waiver of the defense; (2) the failure to pursue an interlocutory appeal from the denial in 1987 of a motion to stay in favor of arbitration did not prevent defendants from renewing the motion in 1995; (3) the Bankruptcy Court had the authority to stay the non-core proceeding in favor of arbitration; and (4) the District Court's review of the Bankruptcy Court's recommended disposition was legally sufficient.

## BACKGROUND

This action arises out of two contracts pursuant to which Crysen sold oil to defendant Scallop Petroleum Co. ("Scallop"), formerly a subsidiary of defendant Shell Oil Co. ("Shell"). In January 1986, Scallop rejected Crysen's delivery of over 200,000 barrels of oil because the sulfur content of the oil allegedly exceeded the limit specified by the relevant contract. Scallop then refused to allow Crysen to cure the alleged defect, relying on a "time is of the essence" provision to cancel the contract. As oil prices had fallen in the period between agreement and delivery, Scallop purchased less expensive replacement oil and Crysen was forced to re-sell the rejected oil at a lower price.

Crysen, which in June 1986 had filed a petition for relief under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*, commenced an adversary proceeding against Scallop on March 16, 1987. In its initial answer, Scallop relied on a contractual arbitration clause in asserting a "First Affirmative Defense of Arbitration." Scallop moved shortly thereafter to stay the adversary proceeding in order to submit Crysen's claims to arbitration, but the Bankruptcy Court denied the motion to stay on May 29, 1987.

Scallop filed three amended answers over the next fifteen months. After Crysen subsequently filed an amended complaint naming Shell as a co-defendant, defendants filed an answer on January 6, 1989, requesting a jury trial. Collectively, the four amended answers included thirteen defenses not pleaded in Scallop's original answer; in none of the four answers did Scallop or Shell reassert the arbitrability defense offered in Scallop's original answer.

In 1990, Crysen moved and defendants cross-moved for summary judgment. The Bankruptcy Court denied the motions on the ground that there existed a genuine factual dispute as to whether the oil had conformed to specifications. Following the decision, the parties engaged in extensive discovery, which was not completed until September 1, 1995. Crysen then filed a renewed motion for summary judgment, after which defendants moved by order to show cause why the adversary proceeding should not be stayed in favor of arbitration. The Bankruptcy Court signed the

order, entertained argument, and on November 20, 1995, granted the motion to stay. In revisiting and reversing its 1987 decision, the Bankruptcy Court relied exclusively on *Hays and Co. v. Merrill Lynch, Inc.*, 885 F.2d 1149 (3d Cir.1989), in which the Third Circuit had reversed its own earlier decision and concluded that district courts lack discretion to deny enforcement of an arbitration clause in a non-core adversary proceeding.

The parties then shifted to arbitration. After the arbitration panel issued an Award on January 27, 1997, denying Crysen's claims in their entirety, the matter was returned to the Bankruptcy Court. Finding no reason to vacate the arbitration award, the Bankruptcy Court issued Proposed Findings of Fact and Conclusions of Law recommending that the adversary proceeding be dismissed with prejudice. The District Court accepted the proposed disposition and dismissed the action. *See In Re: Crysen/Montenay Energy Co.*, 240 B.R. 166 (S.D.N.Y.1999). This appeal followed.

## DISCUSSION

On appeal, Crysen principally asserts three arguments: that defendants waived their contractual right to arbitrate, that the Bankruptcy Court lacked the authority to stay the non-core proceeding in favor of arbitration, and that the District Court's review of the Bankruptcy Court's recommended disposition was legally insufficient. We address each of these arguments in turn.

## I. Waiver

### A. *Express Waiver*

■ Crysen asserts that defendants expressly waived the affirmative defense of arbitrability by failing to include it in any of the four amended answers that were filed after the Bankruptcy Court had rejected Scallop's May 1987 motion to stay in favor of arbitration. It is well settled that an amended pleading ordinarily super-

sedes the original and renders it of no legal effect. *See, e.g., Harris v. City of New York*, 186 F.3d 243, 249 (2d Cir.1999). However, we have not yet addressed whether there is a futility exception to this rule where a party fails to advance in a subsequent pleading a claim or defense that already has been rejected by the court. Somewhat surprisingly, there exists a Circuit split on this issue; the Ninth Circuit requires repleading despite obvious futility, *see Marx v. Loral Corp.*, 87 F.3d 1049, 1055–56 (9th Cir.1996) (enforcing the Circuit rule but acknowledging that it has been criticized as unduly formalistic, rigid, and mechanical), while the Tenth and Eleventh Circuits do not, *see Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1191 n. 5 (11th Cir.1999), *cert. denied*, —— U.S. ——, 120 S.Ct. 2197, 147 L.Ed.2d 233 (2000); *Davis v. TXO Production Corp.*, 929 F.2d 1515, 1517 (10th Cir.1991). We see no reason to require repleading of a claim or defense that explicitly has been denied. Accordingly, we hold that defendants' failure to include an arbitration defense in the amended answers filed after the Bankruptcy Court had denied the initial motion to stay did not constitute an express waiver of the defense.

### B. *Implied Waiver*

■ Nor did defendants impliedly waive their right to move to enforce the contractual arbitration clause. We have explained:

Federal policy strongly favors arbitration as an alternative means of dispute resolution. This preference for arbitration [has] led to its corollary that *any doubts* concerning whether there has been a waiver are resolved in favor of arbitration. We have often stated that waiver of arbitration is not to be lightly inferred.

Nonetheless, a party waives its right to arbitration when it engages in protracted litigation that prejudices the opposing party. [P]rejudice as defined by our cases refers to the inherent unfair-

ness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue. Incurring legal expenses inherent in the litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver. Thus, we have found that a party waived its right to arbitration where it engaged in extensive pre-trial discovery and forced its adversary to respond to substantive motions, delayed invoking arbitration rights by filing multiple appeals and substantive motions while an adversary incurred unnecessary delay and expense, and engaged in discovery procedures not available in arbitration.

Therefore, in determining whether [a party] has waived its right to arbitration, we will consider such factors as (1) the time elapsed from commencement of litigation to the request for arbitration, (2) the amount of litigation (including any substantive motions and discovery), and (3) proof of prejudice. There is no bright-line rule, however, for determining when a party has waived its right to arbitration: the determination of waiver depends on *the particular facts of each case.*

*PPG Industries, Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107–08 (2d Cir. 1997) (emphases added) (internal citations and quotation marks omitted) (alteration in original) (concluding that a party that engaged in discovery and filed a substantive motion prior to filing a petition to compel arbitration had waived its contractual right to arbitrate).

The "particular facts" of the instant case do not lend themselves to ready application of the standard set forth above. In looking to the first prong under *PPG*, it is clear that "the time elapsed from commencement of litigation to the request for arbitration" was minimal. However, as Crysen emphasizes, Scallop did not seek an interlocutory appeal of the denial of its timely motion for a stay. With regard to

the second prong, "the amount of litigation (including any substantive motions and discovery)" was substantial: The parties litigated for eight years—six of which followed the Third Circuit's decision in *Hays*—including extensive discovery and cross-motions for summary judgment. The third *PPG* prong—proof of prejudice—largely collapses into the second; Crysen arguably was prejudiced because it had to litigate the action for eight years. *Cf. id.* at 107; *Cotton v. Slone*, 4 F.3d 176, 179–80 (2d Cir.1993) (finding prejudice where the party seeking to enforce an arbitration clause already had availed itself of pre-trial discovery, brought substantive motions, and invoked the powers and procedures of the district court).

Had defendants first moved in 1995 for a stay in favor of arbitration—eight years after the suit had been filed—there could be no doubt of waiver under *PPG*. However, the instant case is far different than *PPG* because of the motion to stay filed by Scallop shortly after the action was brought in 1987. Accordingly, the issue facing us here simply was not presented in *PPG*: Are defendants responsible for the eight years of litigation because of Scallop's failure to take an interlocutory appeal from the denial of the motion to stay in favor of arbitration? In light of Scallop's prompt filing in 1987 of the motion to stay, the strong federal preference in favor of arbitration, and the policy against finding an implied waiver of arbitration rights when there exist "any doubts" on that score, we decline to disturb the District Court's holding that defendants did not impliedly waive their arbitrability defense.

Our conclusion—that the failure to take an interlocutory appeal of the denial of the motion to stay did not constitute an implied waiver of defendants' arbitrability defense, despite the intervening years of litigation that took place before the motion was renewed—does not conflict with *Cotton* because that decision relied on a statutory provision that had not been enacted in 1987, when Scallop failed to ap-

peal. In *Cotton*, we held that a defendant had waived his contractual right to compel arbitration where: (1) the District Court denied the defendant's motion to compel arbitration; (2) he failed to take an interlocutory appeal as of right under § 16(a) of the Federal Arbitration Act ("FAA"), 9 U.S.C. § 16(a)(1);[1] and (3) he proceeded with discovery and made several substantive motions before finally challenging on appeal from a final (default) judgment the denial of the motion to compel. *See Cotton*, 4 F.3d at 179–80. We concluded that "[t]he aims of section 16(a) would be defeated if a party could reserve its right to appeal an interlocutory order denying arbitration, allow the substantive lawsuit to run its course (which could take years), and then, if dissatisfied with the result, seek to enforce the right to arbitration on appeal from the final judgment." *Id.* at 180. Accordingly, we held that the defendant had waived his right to compel arbitration.

Although Crysen contends that *Cotton* requires us to conclude that defendants in the instant case waived their arbitrability defense, we believe the issue is controlled not by *Cotton* but by our earlier decision in *Drayer v. Krasner*, 572 F.2d 348 (2d Cir. 1978) (Friendly, J.). The *Cotton* decision makes no reference to *Drayer*, in which we concluded that a party that had failed to take an available interlocutory appeal of an order granting a stay in favor of arbitration *did not* waive his right to challenge the arbitration clause on appeal from a final judgment. In *Drayer*, the defendants moved for, and the District Court granted, a stay to enforce an arbitration clause in the relevant contract. The plaintiff—Drayer—failed to file an interlocutory appeal from the stay order, though he could have done so. *See Drayer*, 572 F.2d at 350. Instead, Drayer waited, lost on the merits in arbitration, and then on appeal attacked the District Court's confirmation of the arbitration award, claiming that the contractual arbitration clause was illegal. We held that Drayer had not waived his ability to challenge the District Court's decision to stay in favor of arbitration, stating that "[f]ailure to take an authorized appeal from an interlocutory order *does not preclude raising the question on appeal from the final judgment.*" *Id.* at 353 (emphasis added).

We agree with the District Court, *see* 240 B.R. at 175, that the holdings in these two cases are irreconcilable; the *Cotton* decision *sub silentio* overruled *Drayer.*[2] We apply *Drayer*, not *Cotton*, to the instant case because our decision in *Cotton* focused on the "aims of section 16(a)," 4 F.3d at 180, a provision we described as

---

1. Section 16(a), which was enacted on November 19, 1988, *see* Pub.L. No. 100–702, tit. X, § 1019, 102 Stat. 4671, § 15, provides that "[a]n appeal may be taken from—(1) an order—(A) refusing a stay of any action under section 3 of this title...." 9 U.S.C. § 16(a)(1). Section 3, in turn, provides:

   If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending ... shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement....

   9 U.S.C. § 3.

2. We recognize that the procedural postures of the two cases were somewhat different: In *Drayer*, the plaintiff failed to take an immediate appeal from the District Court's decision

*granting* a motion to stay the action pending arbitration, and instead challenged the order staying the action on appeal from the District Court's entry of a final judgment confirming an adverse arbitration award. *See Drayer*, 572 F.2d at 350, 352–53. By contrast, the defendant in *Cotton* attacked on appeal from a final judgment the District Court's *denial* of his motion to stay the action pending arbitration. *See Cotton*, 4 F.3d at 178. Neither side has suggested how this distinction might be a material one, and we conclude that the distinction has no bearing on the issue before us: whether Scallop impliedly waived its right to arbitrate by failing to take an interlocutory appeal from the Bankruptcy Court's initial *denial* of Scallop's motion to stay in favor of arbitration and then by litigating the action for eight years before renewing the motion to stay.

having been "designed to streamline the appellate aspect of the litigation process so that parties may realize their arbitration rights at the earliest possible moment." *Id.* Section 16(a) is not relevant to the instant case because Scallop's failure to take an interlocutory appeal occurred in May 1987, approximately eighteen months prior to the enactment of the statutory provision at issue in *Cotton.* Scallop had no right to an interlocutory appeal under § 16(a); Scallop's right to an immediate appeal instead was analogous to Drayer's,[3] and, as noted, Drayer's "[f]ailure to take an authorized appeal from an interlocutory order d[id] not preclude raising the question on appeal from the final judgment."[4] *Drayer,* 572 F.2d at 353. As defendants had not impliedly waived the right to contest on appeal from a final judgment the failure of the Bankruptcy Court to grant the stay, nothing prevented them from asking the Bankruptcy Court to reconsider its earlier decision in advance of the entry of judgment. As the District Court stated, "[f]or Crysen, Congress acted one-and-a-half years too late." 240 B.R. at 176.

■ In sum, we conclude that despite the failure to appeal immediately the Bankruptcy Court's denial of the 1987 motion to stay in favor of arbitration, under *Drayer* defendants cannot be held responsible for the eight years of litigation that followed, nor for any resultant prejudice to Crysen. Accordingly, we conclude that under the standard set forth in *PPG,* defendants did not waive their arbitrability defense.[5]

## II. The Bankruptcy Court's Power to Stay

■ Our recent decision in *In re United States Lines, Inc.,* 197 F.3d 631, 640–41 (2d Cir.1999), *cert. denied,* —— U.S. ——, 120 S.Ct. 1532, 146 L.Ed.2d 347 (2000), makes it clear that bankruptcy courts have the power to stay non-core proceedings in favor of arbitration. In explaining our holding that bankruptcy courts in some circumstances retain discretion to decline to stay core proceedings in favor of arbitration, we noted in *U.S. Lines* that any conflict between the Bankruptcy Code, which favors centralization of disputes concerning a debtor's estate, and the Arbitration Act, which advocates a decentralized approach to dispute resolution,

---

**3.** Defendants argue that Scallop had *no* right in 1987 to an interlocutory appeal of the Bankruptcy Court's decision denying the motion to stay pending arbitration. We conclude that Scallop, like Drayer, could have taken an interlocutory appeal under *Enelow v. New York Life Ins. Co.,* 293 U.S. 379, 55 S.Ct. 310, 79 L.Ed. 440 (1935), and *Ettelson v. Metropolitan Life Ins. Co.,* 317 U.S. 188, 63 S.Ct. 163, 87 L.Ed. 176 (1942) (together, "*Enelow–Ettelson*"). Though the *Enelow–Ettelson* doctrine was much-criticized, and eventually was overturned by the Supreme Court in *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 108 S.Ct. 1133, 99 L.Ed.2d 296 (1988) (itself largely mooted by the enactment of § 16(a) a few months later), the doctrine was as available to Scallop in 1987 as it had been to Drayer over a decade earlier.

**4.** Because *Drayer* was the governing law of this Circuit in 1987, it may well have influenced Scallop's decision not to take an interlocutory appeal of the denial of its motion to stay in favor of arbitration.

**5.** We also reject Crysen's contention that the Bankruptcy Court improperly ignored the law of the case in granting the 1995 motion to stay. Relying on the intervening *Hays* decision, the Bankruptcy Court concluded in 1995 that it improperly had found in 1987 that it had discretion to deny a stay in favor of arbitration. The law of the case doctrine in no way prevents such reconsideration. As we have explained, the doctrine "posits that if a court decides a rule of law, that decision should continue to govern in subsequent stages of the same case.... Application of the law of the case doctrine is discretionary and does not limit a court's power to reconsider its own decisions prior to final judgment." *Sagendorf–Teal v. County of Rensselaer,* 100 F.3d 270, 277 (2d Cir.1996) (internal quotation marks omitted); *see also United States v. Williams,* 205 F.3d 23, 34 (2d Cir. 2000). In the instant case, the District Court did not enter final judgment between 1987 and 1995, thereby leaving it wholly within the Bankruptcy Court's discretion to reconsider its prior decision.

is lessened in non-core proceedings which are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration. *See Hays & Co.*, 885 F.2d at 1161. Core proceedings implicate more pressing bankruptcy concerns, but even a determination that a proceeding is core will not automatically give the bankruptcy court discretion to stay arbitration.

*Id.* at 640. This statement is pregnant with the assumption, which we now state explicitly, that bankruptcy courts *have* authority to stay *non-core* proceedings in favor of arbitration.

■ The issue in *U.S. Lines* was whether a bankruptcy court *may decline* to stay a *core* proceeding in favor of arbitration. As we noted there, the presumption in favor of arbitration generally will trump the lesser interest of bankruptcy courts in adjudicating non-core proceedings that could otherwise be arbitrated. We also explained that "even" in core proceedings, in which the interest of the bankruptcy court is greater, the bankruptcy court nonetheless *might* lack discretion to decline to stay in favor of arbitration. The unmistakable implication is that bankruptcy courts generally *do not* have discretion to *decline* to stay *non-core* proceedings in favor of arbitration, and they certainly have authority to grant such a stay. If, as we suggested in *U.S. Lines*, bankruptcy courts *must* stay non-core proceedings, logic compels the conclusion that they are empowered to do so, notwithstanding Crysen's claim to the contrary.

The implicit conclusion in *U.S. Lines* that bankruptcy courts generally must stay non-core proceedings in favor of arbitration is in harmony with the general principles governing arbitration and bankruptcy law. We have explained that "bankruptcy jurisdiction [is] to be construed as broadly as possible within ... constitutional constraints." *In re Ben Cooper, Inc.*, 896 F.2d 1394, 1398 (2d Cir.), *vacated*, 498 U.S. 964, 111 S.Ct. 425, 112 L.Ed.2d 408 (1990), *reinstated*, 924 F.2d 36

(2d Cir.1991); *see also In re S.G. Phillips Constructors, Inc.*, 45 F.3d 702, 705 (2d Cir.1995). In addition, the Supreme Court has instructed that "[t]he Arbitration Act ... establishes a federal policy favoring arbitration." *Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (internal quotation marks omitted). Crysen's position—that bankruptcy courts may not stay non-core proceedings in favor of arbitration—is at odds with both of these principles.

Our strong interest in maximizing scarce judicial resources likewise supports the conclusion that bankruptcy courts may stay non-core proceedings in favor of arbitration. The Third Circuit's *Hays* decision—holding that district courts *must* stay non-core proceedings in favor of arbitration—is generally accepted. *See, e.g., U.S. Lines*, 197 F.3d at 640–41; *In re Nat'l Gypsum Co.*, 118 F.3d 1056, 1066 (5th Cir.1997) (noting that *Hays* "makes eminent sense" and "has been universally accepted"). It would make no sense to find that bankruptcy courts—which are constituted under 28 U.S.C. § 151 as "unit[s] of the district court"—cannot stay such proceedings; the absurd result of such a decision would be to force a party seeking a stay to go to the district court and have it remove the reference to the bankruptcy court so that the district court could entertain a motion that, under *Hays* and its progeny, it cannot deny. We decline to impose on courts and litigants this wholly unnecessary burden.

### III. The District Court's Review Was Legally Sufficient

■ Finally, the District Court's review of the Bankruptcy Court's recommended disposition, which in turn was based on the Award of the arbitration panel, was entirely adequate. The statute delineating a bankruptcy court's authority in adjudicating a non-core proceeding requires that a district court undertake a *de novo* review of the bankruptcy court's proposed find-

ings of fact and conclusions of law. *See* 28 U.S.C. § 157(c)(1).[6] In the instant case, the District Court properly explained that it "reviews *de novo* those portions of a bankruptcy judge's proposed findings of fact and conclusions of law to which any party has [objected]." 240 B.R. at 169. Crysen nonetheless claims that the District Court failed to comply with the commands of § 157(c) because the Court did not undertake a *de novo* review of the arbitration award, but rather reviewed it for "manifest disregard of the law." *Id.* at 177. This claim is devoid of merit. Crysen's suggestion—that in a non-core proceeding a district court must review *de novo* an arbitration award, not simply the bankruptcy court's own review of that award—is illogical and without support. The District Court properly reviewed the decision of the Bankruptcy Court by putting itself in the position of the Bankruptcy Court when it offered its recommendation—that is, by reviewing the award for manifest disregard of law. This is precisely what *de novo* review required.[7]

### CONCLUSION

To summarize, we hold that:

(1) a defendant's failure to include in an amended pleading a defense that already had been rejected explicitly by the trial court did not constitute an express waiver of the defense;

(2) the failure to take an interlocutory appeal from the Bankruptcy Court's de-

nial in 1987 of a motion to stay in favor of arbitration, prior to the enactment of 9 U.S.C. § 16(a), did not prevent defendants from renewing the motion in 1995;

(3) bankruptcy courts possess the authority to stay non-core proceedings in favor of arbitration; and

(4) the District Court's review of the Bankruptcy Court's recommended disposition was legally sufficient.

Accordingly, we affirm the judgment of the District Court, which accepted the Bankruptcy Court's Proposed Findings of Fact and Conclusions of Law and dismissed Crysen's claims.

---

6. Section 157(c) provides in relevant part that a "bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."

7. Crysen's claim that the District Court's review ran afoul of the constitutional concerns that animated the Supreme Court's plurality opinion in *Northern Pipeline Const. Co. v.*

*Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), is equally without foundation. As we have just explained, in handling this matter the Bankruptcy and District Courts followed the prescriptions established by § 157(c). Congress enacted that provision in direct response to *Marathon. See generally U.S. Lines*, 197 F.3d at 636–37 (explaining *Marathon*, § 157, and the genesis of the core/non-core distinction). Because the District Court complied with § 157(c) and reviewed *de novo* the recommendations of the Bankruptcy Court, this case implicates none of the constitutional concerns identified by the Supreme Court in *Marathon.*