**In the Matter of DURANGO GEORGIA PAPER COMPANY, Durango Georgia Converting Corporation, Durango Georgia Converting, LLC, Debtors.**

**Durango Georgia Converting, LLC, Plaintiff,**

v.

**TST Impreso, Inc., Defendant.**

**Bankruptcy No. 02–21669.**
**Adversary No. 03–2049.**

United States Bankruptcy Court,
S.D. Georgia,
Brunswick Division.

Jan. 22, 2004.

W. Brooks Stillwell, Hunter, Maclean, Exley & Dunn, Savannah, GA, for Debtors.

### ORDER ON MOTION TO STAY ADVERSARY PROCEEDING AND COMPEL ARBITRATION

LAMAR W. DAVIS, JR., Bankruptcy Judge.

On November 19, 2002, Durango Georgia Converting, LLC ("Durango") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code and TST Impreso, Inc., ("TST") did not file a proof of claim in the case. On August 19, 2003, Durango brought an adversary complaint against TST for breach of contract of two separate promissory notes and a security agreement. In its complaint, Durango seeks to recover the outstanding principal, accrued interest, and other obligations due under the promissory notes. In the alternative, Durango seeks to recover a 1996 Hamilton Paper Press in which it has an interest pursuant to the security agreement. On September 29, 2003, TST filed a Motion to Stay Adversary Proceeding and Compel Arbitration, upon which this Court now rules, in order to remove Durango's complaint to Dallas, Texas, for arbitration.

A hearing in this matter was held on November 21, 2003. This Court's jurisdiction over Durango's adversary complaint is limited to that provided in 28 U.S.C. § 157(c)(1) as a matter "otherwise related to a case under title 11." Based upon the pleadings and arguments presented, I choose to abstain from hearing Durango's adversary complaint, and order same removed to be arbitrated in Dallas, Texas.

*FACTS*

On April 5, 2001, Durango entered into an Asset Purchase Agreement ("APA") with TST to sell substantially all of the assets of its paper converting facility located in Greencastle, Pennsylvania. Section 2.3 of the APA stated that:

> The Buyer shall pay to the Seller or its designees at the Closing $12,340,231.50 ... by delivery of: (i) cash in an amount equal to $11,399,653 ... (ii) the unsecured promissory note of the Buyer, in the principal amount of $300,000 ... (iii) the secured note of the Buyer, in the principal amount of $640,578.50 ...

Accordingly, TST executed, and Durango accepted, one note in the amount of $300,000.00 ("300K Note") and another note in the amount of $640,578.50 ("Press Note") on or about April 27, 2001. Additionally, a security agreement was executed to secure the Press Note which granted Durango a first priority security interest in a 1996 Hamilton Paper Press located at the Greencastle paper converting facility ("Press").

TST first defaulted under the terms of the 300K Note when it failed to make scheduled payments on April 1, 2002, and July 1, 2002. However, those two payments were later made on August 1, 2002. On October 1, 2002, TST again failed to make a payment and has not since made a payment on the 300K Note. TST defaulted on the Press Note when it failed to make a scheduled payment on August 31, 2002.

TST's Motion to Stay Adversary Proceeding and Compel Arbitration is based on the fact that the APA for which the promissory notes and security agreement were given contain a mandatory and binding arbitration provision requiring arbitration in Dallas, Texas. The relevant language in the APA states that:

> Except as otherwise provided herein, any dispute, controversy or claim arising out of, relating to, or in connection with, this Agreement, or the breach, termination or validity thereof, *shall* be finally settled by arbitration ... The seat of the arbitration shall be Dallas, Texas ...

§ 13.6(a)(i) (emphasis added)

In contrast to the APA, the 300K Note, Press Note and Security Agreement do not contain an arbitration provision. Instead, each document contains a permissive forum selection clause that states:

> Any legal action or proceeding with respect to this Note [Agreement] *may* be brought in the courts of the State of Texas sitting in [the] Dallas County or of the United States for the Northern District of Texas ...

300K Note § 4.2(a); Press Note § 3.2(a); Security Agreement § 7.6 (emphasis added)

Based on the arguably contradictory language of the documents discussed, Durango and TST disagree on whether or not this matter should be referred to arbitration.

In addition to § 2.3 cited supra, the APA contains two other references to the 300K Note, Press Note and Security Agreement. Most notably, the APA contains a paragraph entitled "Entire Agreement" that states:

This Agreement (including the Schedules, Exhibits and other documents referred to herein), the Supply Agreement, the [300K] Note, the Security Agreement and the Press Note constitute the entire understanding and agreement between the Parties with respect to the subject matter hereof and thereof and supersede any and all prior agreements and understandings, whether oral or written, between the Parties, with respect to the subject matter, all of which are merged herein.

§ 13.3

The APA also makes reference to the notes and security agreement in a section 1.1 which is entitled "Certain Defined Terms."

Durango contends that there are four reasons why the Court does not have to grant TST's motion and refer this matter to arbitration. First, Durango points to the fact that there is no arbitration agreement in the 300K Note, Press Note or Security Agreement. Second, Durango says that it should not be required to arbitrate this matter because TST did not file a proof of claim in Durango's case and should now be barred from any affirmative relief. Third, Durango contends that an arbitration in Dallas, Texas would be much more expensive than any proceeding in this Court. Not only would all of the witnesses and evidence have to be transported to Dallas, § 13.6(a)(ii) of the APA requires that, "[t]he arbitration shall be conducted by three arbitrators." Durango contends that the hiring of the arbitrators would create an unreasonable burden on the estate. Finally, Durango contends that this court has discretion to deny arbitration even in a non-core matter.

TST believes that arbitration provisions are as enforceable under the Federal Arbitration Act ("FAA") (9 U.S.C.A. §§ 1 et seq.) in bankruptcy court as they are in any other federal forum. It contends that this is a non-core proceeding and since it did not file a proof of claim in this matter, this Court must enforce the arbitration agreement and has no discretion in the matter. Further, TST argues that because the APA incorporates the notes and security agreement the notes should not be read in isolation. Instead, TST thinks that the documents should be looked at as a whole to understand their underlying meaning. Thus, TST argues that this Court should stay the current adversary proceeding pending arbitration in Dallas, Texas.

## ANALYSIS

### Jurisdiction

28 U.S.C. § 157(b)(1) gives bankruptcy judges jurisdiction to "hear and determine all cases under title 11 and all *core proceedings* arising under title 11, or arising in a case under title 11." (emphasis added). Section 157(b)(2) then lists a non-exclusive series of proceedings which are core proceedings under the statute. If a matter is not a core proceeding but is "otherwise related to a case under title 11," a bankruptcy court may hear a case and enter proposed findings of fact and conclusions of law to be considered by the district court pursuant to § 157(c).

Durango conceded in its August 19 Complaint and at the November 21 hearing that this Court does not have core jurisdiction over this matter. Instead, Durango's Complaint states that, "[t]his Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(b) because this proceeding is *related to* the bankruptcy case involving Durango Georgia." Complaint, ¶ 5 (Aug. 19, 2003) (emphasis added). Nowhere in the complaint does Durango make mention of any claims exclusively derived from the

Bankruptcy Code. Based on Durango's concession that its adversary complaint is only "related to a case under chapter 11," I hold that Durango's current adversary complaint is not a core proceeding.[1]

Having determined that this is a non-core proceeding, I am presented with two additional questions. First, it must be determined whether Durango's adversary complaint is within the scope of the pre-petition arbitration provision and the FAA. Second, if it is within such scope, I must determine whether the Bankruptcy Code conflicts with the arbitration provision and FAA such that I have discretion to decline to enforce the arbitration agreement.

### The Federal Arbitration Act and Scope of the Arbitration Agreement

■ Congress enacted the Federal Arbitration Act in 1925 to "revers[e] centuries of judicial hostility to arbitration agreements by plac[ing] arbitration agreements 'upon the same footing as other contracts.'" *Shearson/American Exp., Inc. v. McMahon*, 482 U.S. 220, 225–26, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987) (internal citations omitted). The FAA applies to, "a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction." 9 U.S.C. § 2. Further, the FAA goes on to state that:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall* on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

The Supreme Court has embraced as a general principle of the applicability of the FAA that, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Co.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Further, it has also stated that, "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582–3, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960). There is clearly a federal policy favoring arbitration.

In this case, Durango has argued that the arbitration provision and the forum

---

**1.** It seems well settled that an adversary complaint to recover a prepetition account receivable where the defendant did not file a proof of claim is not a core proceeding. *See generally Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (holding in plurality opinion that bankruptcy court does not possess constitutional power to adjudicate debtors damages claim for breach of contract and warranty, misrepresentation, coercion and duress that arose before filing of bankruptcy petition); *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1102 (2nd Cir.1993) ("we hold that this breach-of-contract action by a debtor against a party to a pre-petition contract, who has filed no claim with the bankruptcy court, is non-core"); 1 Collier on Bankruptcy ¶ 3.02(3)(d)(ii) & 3.02(4) (15th ed. rev.2003) ("[i]t should be clear that actions to collect prepetition accounts receivable are straightforward Marathon-type contract actions and are, thus, not core proceedings.")

selection clause conflict in that the APA contained mandatory language that stated, "any dispute.. *shall* be finally settled by arbitration." APA, § 13.6(a)(i) (emphasis added). In contrast, the 300K Note, Press Note and Security Agreement contained permissive language that stated, "[a]ny legal action ... *may* be brought in the courts of the State of Texas sitting in [the] Dallas County or of the United States for the Northern District of Texas." 300K Note, § 4.2(a); Press Note, § 3.2(a); Security Agreement, § 7.6 (emphasis added).

■ Critical to my decision is the fact that the APA made reference to the 300K Note, Press Note and Security Agreement three times. Most importantly, the APA contained an integration clause stating that, "[t]his [APA] Agreement ... the [300K] Note, the Security Agreement and the Press Note constitute the entire understanding and agreement between the Parties." APA, § 13.3. The interrelatedness of the documents requires that they be viewed as a whole and not read in isolation. *See BWA Corp. v. Alltrans Exp. U.S.A., Inc.*, 112 A.D.2d 850, 493 N.Y.S.2d 1, 3 (1st Dept.1985) ("Where several instruments constitute part of the same transaction, they must be interpreted together. In the absence of anything to indicate a contrary intention, instruments executed at the same time, by the same parties, for the same purpose, and in the course of the same transaction will be read and interpreted together, it being said that they are, in the eye of the law, one instrument.").[2] That is, the notes and security

agreement should be construed to implicitly incorporate the terms of the APA unless the notes or security agreement explicitly change or contradict the language of the APA.

■ It is a longstanding rule of construction that where there is an apparent conflict between two clauses or provisions of a contract, it is the court's duty to find harmony and to reconcile them, if possible. *See, e.g. People v. Stokes*, 165 Misc.2d 934, 630 N.Y.S.2d 634, 637 (1995). Here, it is possible to give meaning to both the arbitration provision of the APA as well as the forum selection clause of the 300K Note, Press Note and Security Agreement. Read together, the documents can be understood to mean that in a dispute involving the notes there are three possible forums in which any controversy can be heard. That is, this matter can be resolved through arbitration in Dallas Texas, litigation in Dallas, Texas or litigation in the court of the United States for the Northern District of Texas. In short, the forum selection clauses do not contradict the arbitration provision, but instead add two more forums in which any dispute can be heard. Thus, based on a reading of the documents as a whole in an attempt to harmonize them, I hold that Debtor's adversary complaint is within the scope of the arbitration provision and this matter should be resolved in one of the three forums listed unless the Bankruptcy Code conflicts with the FAA such that I should exercise my discretion and override the arbitration provision.[3]

**2.** Durango and TST did not dispute and all documents were in agreement that any dispute shall be governed in all respects by the internal laws of the State of New York. *See* APA, § 13.6(a); 300K Note, § 4.2(a); Press Note § 3.2(a); Security Agreement § 7.6.

**3.** TST specifically cited *HG Estate, LLC v. Corporación Durango*, 271 F.Supp.2d 587,

595–6 (S.D.N.Y.2003), as a case addressing the issue of whether or not an arbitration provision in a purchase agreement should have primacy over a forum selection clause in a related promissory note. On similar facts but in a non-bankruptcy proceeding, the *HG Estate* Court held that, "in determining the order in which the parties' disputes will be addressed, primacy should go to the arbitra-

### Discretion to Decline to Enforce Arbitration Provision

■ As discussed, the Supreme Court has established the principle that there is a federal policy favoring arbitration and deference should be granted arbitration provisions. In contrast, an overriding principle of the current bankruptcy legislation is that bankruptcy claims should be resolved in a single forum. *See e.g. Elscint, Inc. v. First Wisconsin Financial Corp. (In re Xonics),* 813 F.2d 127, 131 (7th Cir.1987) ("bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets"); *In re Trident Shipworks, Inc.,* 243 B.R. 130, 132 (Bankr.M.D.Fla.1999) ("overriding principle of current bankruptcy legislation is that claims against the estate of a debtor shall be resolved in one single forum"). Obviously, the proliferation of litigation in non-bankruptcy forums located distant from the bankruptcy court would be counterproductive to the efficient and expeditious administration of the estate.

■ In *Ambassador Factors v. First American Bulk Carrier Co. (In re Topgallant),* Nos. 92–4123, 89–41996, 1993 WL 13003252, *1 (Bankr.S.D.Ga. March 31, 1993), I cited *Hays & Co. v. Merrill Lynch,* 885 F.2d 1149 (3rd Cir.1989), for the proposition that in a non-core proceeding, "the party opposing arbitration has the burden of showing that the provisions of the Bankruptcy Code conflict with the enforcement of an arbitration clause." *Hays* and subsequent decisions have established the principle that bankruptcy courts generally have no discretion to refuse to compel the arbitration of matters not involving "core" bankruptcy proceedings under 28 U.S.C. § 157(b) if the text, legislative history, or purpose of the Bankruptcy Code is not shown to conflict with the enforcement of the arbitration clause. *See Gandy v. Gandy (In re Gandy),* 299 F.3d 489, 495 (5th Cir.2002) ("it is generally accepted that a bankruptcy court has no discretion to refuse to compel the arbitration of matters not involving 'core' bankruptcy proceedings under 28 U.S.C. § 157(b)"); *Crysen/Montenay Energy Co. v. Shell Oil Co. (In re Crysen/Montenay Energy Co.),* 226 F.3d 160, 165–6 (2d Cir. 2000) ("any conflict between the Bankruptcy Code ... and the Arbitration Act ... is lessened in non-core proceedings which are unlikely to present a conflict sufficient to override by implication the presumption in favor of arbitration."); *Pardo v. Akai Electric Co. Ltd. (In re Singer Co. N.V.),* No. 00 Civ. 6793, 2001 WL 984678, *2–3 (S.D.N.Y. Aug.27, 2001).

■ Durango has contended that I should exercise discretion and deny enforcement of the arbitration provision. It argues that requiring it to arbitrate the contract dispute in such a distant forum will result in unnecessary expense to the bankruptcy estate. However, Durango's argument is not so much a bankruptcy specific argument as it is a general objection to the terms of a contract to which they willingly consented. In short, Durango has not pointed to a specific substantive bankruptcy right that will be negated or impaired if this matter is sent to arbitration.

While there may be some merit to the contention that arbitration in Dallas, Texas

---

tion clause ... for two reasons: one grounded in public policy [favoring arbitration], and the other in considerations of judicial economy." Unlike this matter, however, the party favoring arbitration in *HG Estate* had already filed a notice of arbitration claim before the party opposing arbitration had filed its breach of contract. Because of this fact and because it was not a bankruptcy case, the *HG Estate* holding was not particularly instructive in helping me reach my current holding.

will result in additional expense, Durango's argument is ironic in that arbitration clauses are ordinarily inserted into contracts to avoid expensive and time-consuming litigation. Apparently, Durango believed that arbitration would be the most expeditious way to handle disputes when it entered into the APA. Further, arbitration may still be the most expeditious way to handle this matter. If TST's motion is denied, this non-core adversary proceeding will likely be tried here. However, because this is a non-core proceeding, this Court cannot enter a final order but must transmit its proposed findings of fact and conclusions of law to the district court following litigation. *See* 28 U.S.C. § 157(c)(1). Upon reviewing such transmittal, final judgment will be entered by the district court. However, if either party specifically objects to an item the district court must grant the matter *de novo* review. *Id.* Of course, any ruling of the District Court may be subjected to additional appeal. In contrast, arbitration would lead to summary resolution of the matter followed merely by enforcement by the District Court if necessary. *See* 9 U.S.C. § 9. After considering the two possible scenarios, I hold that Durango has not satisfied its burden of showing that arbitration will conflict with the underlying purposes of the Bankruptcy Code.

### Arbitration in Dallas, Texas

■ Critical to my decision was the fact that TST did not file a proof of claim in Durango's Chapter 11 bankruptcy though

it was provided with notice. Despite failing to file, TST has asked this Court to, "compel arbitration of Durango's claims, as well as TST's claims of Durango's fraud and breach of contract in connection with the [APA]." Def.'s Mot. to Stay Adversary Proceeding and Compel Arbitration, ¶ 3 (Sept. 29, 2003). Additionally, TST stated in a brief that:

> As a result of TST's justifiable reliance upon these and other Durango misrepresentations, TST incurred substantial liabilities and debt. TST's resulting losses approximate $6,000,000, for which it intends to prosecute an action (through arbitration) for recovery of damages caused by Durango's fraud and contractual breaches.
>
> Def.'s Brief in Support of Mot. to Stay Adversary Proceeding, Statement of Facts ¶ D (Sept. 29, 2003).

Based on the foregoing, it appears that TST not only wants to assert fraud as an affirmative defense to Durango's breach of contract, it may also use fraud as a means to recover amounts from Durango.

■ It is well understood that the filing of a proof of claim pursuant to 11 U.S.C. § 501 is, within limited exceptions, a prerequisite to the allowance of such claim on the assets of the bankruptcy estate under 11 U.S.C. § 502.[4] Here, TST has not pointed to any exception that would allow it to file a late claim. Further, in contrast to its pleadings, TST's counsel appeared ready to concede at the

---

4. It should be noted that the filing of a proof of claim is not necessarily a prerequisite to the right of setoff under 11 U.S.C. § 553(a) if both claims arose before the bankruptcy filing. *See The Travelers Indem. Co. v. Conner Ins. Agency, Inc. (In re Conner Ins. Agency, Inc.),* No. 93–20279, 1994 WL 16006138, * 3 (Bankr.S.D.Ga. Nov.4, 1994) (Davis, J.) (allowing creditor that had not filed proof of claim to pursue counterclaim in district court to the extent necessary to offset any liability imposed in lawsuit initiated by debtor); *Matter of Central Equip. & Serv. Co., Inc.,* 61 B.R. 986, 988 (Bankr.N.D.Ga.1986) (lifting automatic stay to allow creditor that had not filed proof of claim to assert counterclaim against debtor in district court). Further, filing a claim is also not a prerequisite to asserting the equitable doctrine of recoupment if both claims involve the same transaction. *See, e.g. Davidovich v. Welton (In re Davidovich),* 901 F.2d 1533, 1539 (10th Cir.1990).

November 21 hearing that it is not entitled to an affirmative recovery through the assertion of a counterclaim because it missed the bar date for filing claims. Accordingly, I hold that any arbitration will be limited to Durango's breach of contract claim and any defenses raised by TST.

### ORDER

TST's Motion to Stay Adversary Proceeding and Compel Arbitration is GRANTED such that Durango's adversary complaint against TST is stayed and the parties are ordered to arbitrate in Dallas, Texas. Said arbitration will be limited to Durango's breach of contract claim, and TST's defenses thereto. Further, the arbitration shall exclude any assertion of a claim for affirmative relief by TST against Debtor. In order for the Court to keep apprised of the progress of arbitration, TST is directed to file a status report with this Court every 90 days. IT IS SO ORDERED.