GREGORY, Circuit Judge,
concurring in the majority opinion in part, and concurring in the judgment:
I agree with Judge Niemeyer’s majority opinion upholding the bankruptcy court’s exercise of jurisdiction over Moses’ core claim for declaratory judgment.[1] Sending such a claim to arbitration would indeed present an “inherent conflict” with the Bankruptcy Code insofar as the claim seeks to determine the validity of a demand on Moses’ estate. See Shearson/Am. Express, Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (allowing the nonenforcement of an arbitration agreement when the arbitration of a claim would present an “inherent conflict” with a “statute’s underlying purposes”).
The same, however, cannot be said for Moses’ non-core claim, which demands money damages for CashCall’s alleged violations of the North Carolina Debt Collection Act (NCDCA), NC. Gen.Stat. §§ 75-50 to 56 (2012). Although the success or failure of the non-core claim may have ancillary effects on Moses’ bankruptcy— primarily through the enlargement of the underlying estate due to any damages received — any such results are simply too attenuated, and indeed extrinsic to the bankruptcy, to constitute an “inherent conflict” with the Bankruptcy Code’s purpose of facilitating an efficient reorganization. As the bankruptcy judge himself observed regarding the non-core claim, “[tjhese damages are unrelated to the Defendant’s proof of claim and are only related to the bankruptcy case in that if successful, the bankruptcy estate will recover any nonexempt funds and disburse them to claims in accordance with the bankruptcy code.” J.A. 87. In such circumstances, Moses has failed to meet her burden of showing “that Congress intended to preclude a waiver of judicial remedies for the statutory rights at issue.” McMahon, 482 U.S. at 227, 107 *83 S.Ct. 2332; see also Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (observing that courts must “rigorously enforce agreements to arbitrate, ... at least absent a countervailing policy manifested in another federal statute”); Moses H. Cone Mem’l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983) (describing the “federal policy favoring arbitration agreements”).
I would thus reverse the district court’s decision allowing Moses’ non-core claim to remain in the bankruptcy court.
I.
To begin with the obvious, a claim is constitutionally non-core because it is .ancillary to the underlying bankruptcy. In recognition of that fact, a bankruptcy judge’s dominion over non-core claims is limited by Article III, § 1 of the Constitution to submitting “proposed findings of fact and conclusions of law to the district court, for that court’s review and issuance of final judgment.” Stern v. Marshall, — U.S. -, 131 S.Ct. 2594, 2602, 180 L.Ed.2d 475 (2011); see also id. at 2620 (holding that a bankruptcy judge’s authority is likewise limited for claims that are statutorily core but constitutionally non-core); see also N. Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 71, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982) (describing the enforcement of non-core state-created private rights as separate and apart from “the restructuring of debtor7 creditor relations”). Further, the Bankruptcy Code itself limits a bankruptcy judge’s authority to hear certain state law matters, even when the resolution of those matters may affect the underlying estate. See 28 U.S.C. § 1334(c)(2) (requiring that bankruptcy courts “abstain from hearing” certain non-core state law claims); 28 U.S.C. § 1334(c)(1) (providing that bankruptcy courts may “abstain[ ] from hearing a particular proceeding,” including core and non-core matters, “in the interest of comity with State courts or respect for State law”); see also Stern, 131 S.Ct. at 2619-20.
The core/non-core distinction, however, is not mechanically dispositive in deciding whether a bankruptcy judge may refuse to send a claim to arbitration. See Cont’l Ins. Co. v. Thorpe Insulation Co. (In re Thorpe Insulation Co.), 671 F.3d 1011, 1021 (9th Cir.2012) ("We agree that the core/non-core distinction, though relevant, is not alone dispositive.”); In re Mintze, 434 F.3d 222, 229 (3d Cir.2006) (“The core/non-core distinction does not ... affect whether a bankruptcy court has the discretion to deny enforcement of an arbitration agreement.”). Instead, what matters fundamentally is whether compelling arbitration for a claim would inherently undermine the Bankruptcy Code’s animating purpose of facilitating the efficient reorganization of an estate through the “[cjentralization of disputes concerning a debtor’s legal obligations.... ” Phillips v. Congelton, LLC (In re White Mountain Mining Co.), 403 F.3d 164, 170 (4th Cir.2005).
Although the mere designation of a claim as non-core does not end the inquiry, I agree with our sister circuits that bankruptcy courts generally have no discretion to refuse to arbitrate a non-core claim. As the Ninth Circuit has observed, surveying other circuits:
The core versus non-core distinction has been articulated by our sister circuits as follows: generally, bankruptcy judges do not have discretion to refuse to compel arbitration of non-core matters because they are generally only tangentially related to a bankruptcy case. Bankruptcy courts may, however, exercise discretion to refuse to compel arbitration of core *84 bankruptcy matters, which implicate more pressing bankruptcy concerns. Yet, even as to core proceedings, the bankruptcy court will not have discretion to override an arbitration agreement unless it finds that the proceedings are based on provisions of the Bankruptcy Code that inherently conflict with the Arbitration Act or that arbitration of the claim would necessarily jeopardize the objectives of the Bankruptcy Code.
Ackerman v. Eber (In re Eber), 687 F.3d 1123, 1130 n. 6 (9th Cir.2012) (internal citations and quotation marks omitted); see also Crysen/Montenay Energy Co. v. Shell Oil Co. & Scallop Petroleum Co. (In re Crysen/Montenay Energy Co.), 226 F.3d 160, 166 (2d Cir.2000) (embracing the conclusion “that bankruptcy courts generally must stay non-core proceedings in favor of arbitration”); Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 885 F.2d 1149, 1150, 1160 (3d Cir.1989) (same); Whiting-Turner Contracting Co. v. Elec. Mach. Enters., Inc. (In re Elec. Mach. Enters., Inc.), 479 F.3d 791, 796 (11th Cir.2007) (same); see also Fred Neufeld, Enforcement of Contractual Arbitration Agreements Under the Bankruptcy Code, 65 Am. Bankr.L.J. 525, 526 (1991) (arguing in support of the Third Circuit’s conclusion in Hays, 885 F.2d at 1150, that “bankruptcy courts do not have the discretion to deny enforcement of arbitration clauses in non-core adversary proceedings brought by the trustee”).
Dissenting from the majority’s conclusion that Moses’ non-core claim should be sent to arbitration, Judge Niemeyer cites the Fifth Circuit’s decision in Gandy v. Gandy (In re Gandy), 299 F.3d 489 (5th Cir.2002), as supporting the proposition that “courts have regularly refused to bifurcate related core and non-core matters.” In Gandy, however, the Fifth Circuit went so far as to observe that “bankruptcy courts generally do not have discretion to decline to stay proceedings involving non-core matters.” Id. at 495 (emphasis added) (also observing that it is “universally accepted” that bankruptcy courts generally do not have such discretion); see also Hays, 885 F.2d at 1150, 1160. Instead, Gandy determined that a bankruptcy judge’s discretion primarily extends “to refuse to enforce an otherwise applicable arbitration agreement when the underlying nature of a proceeding derives exclusively from the provisions of the Bankruptcy Code and the arbitration of the proceeding conflicts with the purpose of the Code.” 299 F.3d at 495; see also Crysen/Montenay, 226 F.3d at 166 (“[T]he presumption in favor of arbitration generally will trump the lesser interest of bankruptcy courts in adjudicating non-core proceedings that could otherwise be arbitrated.”). Factually, Gandy involved “three causes of action that derive[d] entirely from the federal rights conferred by the Bankruptcy Code” and were thus not available outside of bankruptcy to the debtor. 299 F.3d at 495, 497. The debtor’s complaint, the court found, also implicated “non-bankruptcy contractual and tort issues in only the most peripheral manner.” Id. at 497 (internal quotation marks omitted). Such non-bankruptcy causes of action, the court concluded, were simply “inconsequential relative to the bankruptcy causes of action.” Id. at 500. As discussed further below, the same cannot be said of Moses’ state-law claim under the NCDCA.
II.
A bankruptcy judge’s discretion to deny arbitration of non-core matters is thus necessarily narrow. As we suggested in Phillips in the context of a core proceeding, the discretion to deny arbitration should be limited to cases where arbitration would *85 “substantially interfere[ ] with the debtor’s efforts to reorganize.” Phillips, 403 F.3d at 170. Paradigmatically, substantial interference occurs when the resolution of the claim will necessarily affect reorganization in a significant way, and arbitration will thus inherently conflict with the purposes of Bankruptcy Code. See id. In Phillips, for example, we confronted whether an individual was owed money by a debtor — a classic core claim. The debtor’s bankruptcy plan had yet to be approved, the core claim was “critical to ... the plan of reorganization,” and sending the proceeding to arbitration would have jeopardized the reorganization process. Id.
No such danger is present here, however, regarding Moses’ non-core claim under the state debt collector statute. Moses’ Chapter 13 bankruptcy plan has already been approved, and unsecured creditors like CashCall will likely receive nothing. See J.A. 42-50. Nonetheless, the district court affirmed the bankruptcy court’s refusal to send the claim to arbitration, reasoning that the non-core claim was essentially one for damages arising out of the core proceeding and was thus “inextricably intertwined” with it. J.A. 127.
It is true that Moses’ core and non-core actions share one common question. The core action seeks a declaration that Cash-Call’s proof of claim was void under the North Carolina Consumer Finance Act. The non-core claim is based, in part, on an allegation that CashCall sought to collect on an invalid debt, while also alleging that CashCall “has willfully engaged in other and further violations of the North Carolina Prohibited Acts by Debt Collector as may be shown through discovery and proved at trial.” J.A. 39.
But the fact that the claims may share a question does not mean that arbitrating one of them will pose an inherent conflict with the efficient reorganization of a debt- or’s estate. Although the district court itself provided no reasons why it believed such a conflict was inevitable, it suggested in one sentence that the potential for inefficiency and “inconsistent results” justified the bankruptcy court’s actions. J.A. 128. As for any potential inefficiency and delay, if the bankruptcy court retained jurisdiction over Moses’ non-core claim, it could only issue findings of fact and recommendations of law, which would then be subject to de novo review by the district court before a final order could be entered. But if the claim went to arbitration, the arbitrator’s order would simply be subject to enforcement by the district court, with any proceeds then distributed as part of the estate.[2] See Hays, 885 F.2d at 1158.
Furthermore, Moses’ non-core claim shares little overlap with the core claim, apart from the question whether the underlying loan was void in the first place. The non-core litigation will likely require detailed and time-consuming findings regarding CashCall’s conduct in trying to collect on the loan, other violations of the state statute, and damages like emotional distress. As the bankruptcy judge observed regarding the non-core claim, “[t]hese damages are unrelated to the Defendant’s proof of claim and are only related to the bankruptcy case in that if successful, the bankruptcy estate will recover any non-exempt funds and disburse them to claims in accordance with the bankrupt *86 cy code.” J.A. 87. Although the core and non-core claims may overlap in one respect, they cannot be said to be inextricably intertwined such that the denial of arbitration was proper.
Moses additionally argues that arbitration of the non-core claim could substantially interfere with the bankruptcy proceedings by allowing an arbitrator to decide an issue inextricably interrelated with the core claim (the validity of the loan agreement) and thus potentially bind a bankruptcy judge through collateral estoppel. Such a danger, however, is speculative at best. As the Supreme Court has held, “arbitration proceedings will not necessarily have a preclusive effect on subsequent federal-court proceedings.” Dean Witter, 470 U.S. at 223, 105 S.Ct. 1288 (citing McDonald v. West Branch, 466 U.S. 284, 104 S.Ct. 1799, 80 L.Ed.2d 302 (1984)); see also Hays, 885 F.2d at 1158-59 (applying Dean Witter to a bankruptcy context). Further, the Court in Dean Witter noted that “courts may directly and effectively protect federal interests by determining the preclusive effect to be given to an arbitration proceeding.” Dean Witter, 470 U.S. at 223, 105 S.Ct. 1238; see also Hays, 885 F.2d at 1158-59. Finally, to the extent that any danger of preclusion remains, a court may simply stay arbitration proceedings for some brief period until it has ruled on the underlying core claim.
There is thus no reason to believe that arbitration in these circumstances will substantially interfere with Moses’ bankruptcy and present an inherent conflict with the purposes of the Bankruptcy Code. Indeed, the mere possibility of generic litigation-related exigencies, inherent in the act of litigating in another forum, cannot justify the refusal to arbitrate a non-core claim. As the Third Circuit observed in- Hays, Congress’ decision to restrict a bankruptcy court’s jurisdiction over non-core claims, and to require that certain claims be heard in state court, shows that centralization is not, in and of itself, a valid reason to deny arbitration. 885 F.2d at 1159-60. The court further concluded that “even if there were some potential for an adverse impact on the core proceeding [as a result of arbitration], such as inefficient delay, du-plicative proceedings, or collateral estoppel effect, Hayes [sic] has not shown that it would be substantial enough to override the policy favoring arbitration.” Id. at 1158.
I reach the same conclusion about three additional possible rationales for a refusal to send a claim to arbitration in these circumstances. First, the Fifth Circuit in Gandy determined that a bankruptcy judge may refuse to arbitrate state-law claims when those claims are “inconsequential” compared with any core-claims. Gandy, 299 F.3d at 500. Without embracing Gandy’s legal conclusion about the ar-bitrability of such claims, I believe that Moses’ non-core claim cannot be called inconsequential. Whereas Moses’ declaratory judgment action seeks invalidation of an alleged $1,929.02 debt owed to Cash-Call, her state NCDCA claim seeks substantial damages, including those for emotional distress and anxiety, and statutory penalties up to $4,000 per violation of the Act. J.A. 39, 87. As previously described, the state cause of action requires a court to make detailed determinations regarding CashCall’s conduct before Moses declared bankruptcy — apart from the single shared question regarding the illegality of the underlying loan-including allegations that CashCall “has willfully engaged in other and further violations of the [Act]” that go beyond attempting to collect an invalid debt. J.A. 39. Against that backdrop, the state-law action is not inconsequential, or entirely peripheral to the core claim.
*87 Second, Judge Niemeyer suggests that the bankruptcy court may have been justified because Moses’ estate could be enriched or depleted as a result of litigation. If Moses prevailed, the estate could potentially benefit from any damages received— a result that certainly would not frustrate creditors who could share in the spoils. And if she lost, the costs of unsuccessful litigation could partly deplete the estate. But if such generic considerations were enough to justify a denial of arbitration, there would be little limit to a bankruptcy judge’s discretion. Neither Phillips nor the Federal Arbitration Act countenance that result. As previously observed, Phillips instead approved the bankruptcy court’s refusal to send a core claim to arbitration only after finding that “the arbitration would have substantially interfered with the debtor’s efforts to reorganize.” 403 F.3d at 170. There has been no such showing here.
Third, Judge Niemeyer argues that our holding pays insufficient attention to the 800-pound gorilla lurking in the litigation, namely, the enforceability of the arbitration agreement itself. For the first time on appeal, Moses argues that the tribal arbitration provisions specified in the agreement are illusory. She specifically maintains that “there is no such thing as arbitration conducted by the Cheyenne River Sioux Tribe, there are no tribal representatives authorized to conduct arbitration, and there are no tribal consumer dispute rules.” Br. of Appellee 2. CashCall’s strategy, as Moses alleges, is thus to “shield its illegal scheme from any American court and any American law” by sending claims into “a legal black hole called tribal arbitration.” Id. at 2 (citing Heldt v. Payday Fin., LLC, 12 F.Supp.3d 1170, 1192-93 (D.S.D.2014)).
The choice of law and arbitration provisions in question indeed appear similar to others used by .CashCall that have been increasingly scrutinized, and at times derided, by the courts. See Jackson v. Payday Fin., LLC, 764 F.3d 765, 774-76 (7th Cir.2014) (refusing to compel arbitration under similar provisions); Inetianbor v. CashCall, Inc., 962 F.Supp.2d 1303, 1308-09 (S.D.Fla.2013) (finding a similar arbitration agreement to be void); Heldt, 12 F.Supp.3d at 1188-92 (enumerating pervasive problems with enforcement of a similar agreement).
Moses, however, did not raise the issue before the district court or bankruptcy court, and those courts did not make any relevant factual findings about the nature of the loan agreement or its arbitration provisions. Further, CashCall argues in its reply brief that the provisions governing Moses’ agreement are substantially different from those that other courts have considered — an argument that Moses could not respond to and that we are not equipped to resolve. See In re Under Seal, 749 F.3d 276, 285 (4th Cir.2014) (“Our settled rule is simple: [ajbsent exceptional circumstances, ... we do not consider issues raised for the first time on appeal.” (internal quotation marks omitted, alterations in original)). Without more fulsome briefing and a more developed record, we simply cannot reach the enforceability of the agreement.
Judge Niemeyer nonetheless argues that the mere prospect of additional litigation over enforceability may itself help justify the decision not to send Moses’ non-core claim to arbitration. In essence, such cart-preceding-horse logic would reject an arbitration agreement because the agreement may be challenged. The dissent “imagine[s] scenarios” in which the length of time it may take to litigate a challenge of the arbitration agreement could prevent Moses’ creditors from sharing in any augmentation of the estate through damages *88 received. But imagined conflicts are not enough to substantially and inherently interfere with a debtor’s reorganization. That is particularly the case here where Moses’ bankruptcy plan has already been approved.
III.
In sum, the refusal to send a non-core claim to arbitration requires more than a finding that arbitration would potentially conflict with the purposes of the Bankruptcy Code. Rather, the conflict must be inherent and “sufficient to override by implication the presumption in favor of arbitration.” U.S. Lines, Inc. v. Am. Steamship Owners Mut. Prot. & Indemnity Ass’n (In re U.S. Lines), 197 F.3d 631, 640 (2d Cir.1999). On the facts before us, I conclude that Moses has failed to carry her burden to show such a conflict.

. I also join Part III of Judge Niemeyer’s opinion holding that we have no jurisdiction to review the bankruptcy court’s interlocutory order denying CashCall's motion to withdraw its proof of claim.

. As discussed further below, it is possible that the arbitration agreement is,entirely unenforceable on its face, as Moses now argues, because of its tribal choice of law and forum selection provisions. Neither the bankruptcy court nor district court, however, made factual findings about the effect of those provisions in the loan agreement, and we cannot reach the issue on the record before us.